UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAMELA INDIA BERNSTEIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 02-133 (GK) |
| | ) |
| DEPUTY MARSHAL | ) |
| CHARLES ROBERTS, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |
| | ) |

<u>MEMORANDUM OPINION</u>

Plaintiff, Pamela India Bernstein, brings this action against Deputy United States Marshals Pat Coulson and Charles Roberts, in their individual capacities ("Government Defendants" or "Deputy Marshals"), Martin Mooradian, Diana Brownell, and the estate of Michael Wueste. With respect to the Government Defendants, Plaintiff alleges violations of her Fourth Amendment right against unlawful entry into her home and seizure of her property, and various common law torts including intentional and negligent infliction of emotional distress. This matter is before the Court on the Government Defendants' Motion for Summary Judgment, [**#18**].[1] Upon consideration of the Motion, Opposition, Reply, Supplemental Briefs, and the entire record herein, and for the reasons stated below, Defendants' Motion is **granted in part** and **denied in part**.

---

[1] This Motion relates back to Plaintiff's First Amended Complaint. Plaintiff has since filed a Second Amended Complaint, which adds a Section 1983 claim against the Government Defendants. The Government Defendants recently filed a Second Motion for Summary Judgment with respect to that claim.

I.    **BACKGROUND**

On June 6, 1995, the Circuit Court of Fairfax County, Virginia, rendered a $500,000 judgment against Fort Beauregard Development Corporation and Carl Bernstein, Plaintiff Pamela Bernstein's husband. Defs.' St. of Undisp. Mat. Facts ("Defs.' St.") at ¶¶ 1-2. That judgment was domesticated in the Superior Court of the District of Columbia ("Superior Court") on September 8, 1999. Id. at ¶ 1. On March 31, 2000, Mooradian, attorney for one of the parties in the Virginia action, and Wueste, an attorney and party in the domesticated judgment, requested that the Superior Court issue a Writ of Fieri Facias ("Writ") to satisfy the domesticated judgment. Id. at ¶ 3. The Writ explicitly authorized the seizure of Carl Bernstein's property located at 4482 Reservoir Road, N.W., Washington, D.C., within sixty days of its issuance. Pl.'s Opp'n to Defs.' Mot. Sum. Judgment ("Opp'n") at 2. The Writ is date-stamped April 5, 2000, making its return date June 4, 2000. Id.; see Defs.' St. at ¶ 8.

On June 23, 2000, while Plaintiff was out of town, Deputy Marshals Coulson and Roberts, and Wueste arrived at her home at 4482 Reservoir Road, N.W., with a property appraiser, a moving truck, and three movers to execute the Writ. Opp'n at 1. It is undisputed that the Writ had expired 19 days prior to its execution. See Defs.' St. at ¶ 8.

Plaintiff alleges that the Government Defendants and Wueste then unlawfully entered her home on the expired Writ, without the permission of Carl Bernstein, who was home at the time, and proceeded to seize her personal property. Opp'n at 2. Mooradian arrived later and participated in the search and seizure. Id. at 3.

Plaintiff alleges that her husband called her during the seizure to apprize her of the situation, and that he told the Deputy Marshals that most of the property in the home was Plaintiff's. Id. at 2. She claims she spoke over the phone to one of the Deputies and reiterated that she owned most of the property, but that "the Deputy disregarded her entreaties in all respects, and in fact taunted her over the phone, demanding 'receipts.'" Id. Plaintiff claims "she told one of the Defendant Marshals that a fur coat that was being seized was hers and that her name was embroidered on the inside of the coat." Id. Plaintiff also alleges that various property was broken and scattered about the house during the seizure.

Plaintiff promptly returned to the District of Columbia and informed Defendants that the property should be returned immediately, arguing that the Writ had been unlawfully executed because it had expired and because most of the property seized belonged to her, not Carl Bernstein. The United States Marshals

Service refused to release Plaintiff's property without Mooradian's consent, which he refused to grant.

Plaintiff filed a Notice of Claim and Exemptions in Superior Court, asking for the return of the property. Pl.'s St. of Undisp. Mat. Facts at ¶ 7. On November 28, 2000, Judge William M. Jackson of the D.C. Superior Court issued an Order granting Plaintiff's motion for return of her property, finding that "[t]he undisputed facts . . . establish that the writ was not executed until June 23, 2000, which was seventy-nine (79) days after its issue date and nineteen (19) days after its return date. At the time of its execution, therefore, the writ had expired and was null and void." Defs.' St. at ¶¶ 13-14, Ex. A.

The property was returned to Plaintiff on December 21, 2000, approximately six months after it was seized. Thereafter, Plaintiff brought this action seeking punitive and compensatory damages for Defendants' alleged unlawful entry into her home and seizure of her property.

## II.   STANDARD OF REVIEW

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   See Fed. R. Civ. P. 56(c).   A fact is "material" if it might affect the outcome of the

action under the governing law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. at 324 (internal quotations omitted).  See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (nonmoving party has affirmative duty "to provide evidence that would permit a reasonable jury to find" in its favor).

In deciding a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251-52.

## III. ANALYSIS

### A. The Government Defendants Are Not Entitled to Summary Judgment on Plaintiff's Fourth Amendment Claim

The Government Defendants assert that summary judgment should be granted in their favor on Plaintiff's Fourth Amendment claim because they are shielded from liability under the doctrine of qualified immunity.

"A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'"  Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)).  "'[C]learly established' for purposes of qualified immunity means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'"  Wilson, 526 U.S. at 614-15 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  Whether the law was "clearly established" depends largely "upon the level of generality at which the relevant legal rule is to be identified." Wilson, 526 U.S. at 614-15 (internal citations omitted).  This inquiry is an objective one. Id. at 615.

### 1.   Plaintiff Has Sufficiently Alleged a Constitutional Violation

The Court must first determine whether Plaintiff has "alleged the deprivation of an actual constitutional right." <u>Wilson</u>, 526 U.S. at 609.  As the Supreme Court noted in <u>Wilson</u>, this right "must be defined at the appropriate level of specificity before a court can determine if it was clearly established." <u>Id.</u> at 615. In this case, the appropriate question is the objective inquiry whether a reasonable officer could have believed that entering a citizen's home and seizing his or her property under an expired Writ of Fieri Facias was lawful "in light of clearly established law and the information the officers possessed." <u>Id.</u>  The answer is no.

The Fourth Amendment protects against "unreasonable searches and seizures" by requiring that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  It is well-established that "except in certain carefully defined classes of cases, a search of a private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." <u>Camara v. Mun. Court</u>, 387 U.S. 523, 528-29 (1967).

Moreover, in some instances a warrant does exist, but it is so "facially deficient . . . that the executing officers cannot reasonably presume it to be valid" and the search must be

considered warrantless. <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984). That is precisely the case where a search and seizure is conducted pursuant to an expired writ. <u>See</u> <u>Groh v. Ramirez</u>, 540 U.S. 551, 558-59 (2004) (holding unconstitutional a search executed on a warrant that failed to list with particularity the items to be seized, even where the supporting application contained such a list, and the warrant was approved by a magistrate); <u>Wolf-Lillie v. Sonquist</u>, 699 F.2d 864, 870 (7th Cir. 1983) (finding Fourth Amendment violation for execution of an expired writ).

In this case, it is undisputed that the Government Defendants entered Plaintiff's home and seized her property without proper authorization. They concede the Writ was expired when executed; in effect, there was no "warrant" because it was null and void. <u>See</u> Defs.' St. at ¶ 8; <u>Groh</u>, 540 U.S. at 558 ("the warrant was so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law"). Therefore, Plaintiff sufficiently alleges a constitutional violation regarding the warrantless entry into her home.[2]

---

[2]  Plaintiff also alleges that the Government Defendants violated her Fourth Amendment rights by seizing items that clearly belonged to her, and not her husband, thereby exceeding the scope of the Writ. This argument is far less persuasive than the one upon which Plaintiff primarily rests. Regardless, in light of the Court's ruling, it need not be addressed herein.

**2.    The Law Was "Clearly Established" for Purposes of Qualified Immunity**

The Government Defendants next argue that even if Plaintiff can state a constitutional violation, they are entitled to qualified immunity because the law was not clearly established such that a reasonable officer would have known he or she was violating Plaintiff's constitutional rights.

It is undisputed that the Government Defendants entered Plaintiff's home and seized her property on an invalid writ.  The Government Defendants argue they are nonetheless entitled to qualified immunity.  They first argue that "there is little to no law pertaining to writs that would place these officers on notice that in failing to read the writ . . . they risked violating plaintiff's clearly established rights."  Defs.' Mot. at 7.  This argument fails for several reasons.

First, as noted above, an official action is not protected by qualified immunity simply because the exact action in question has not previously been held unlawful.  Instead, qualified immunity can be denied if, "in the light of pre-existing law the unlawfulness [was] apparent.'"  Wilson, 526 U.S. at 614-15.

Because "[t]he basic purpose of th[e Fourth] Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials," Camara, 387 U.S. at 528, Fourth Amendment protections apply in both civil and criminal contexts.  For example, in Camara, the Supreme Court held

that even a routine administrative search of a home for compliance with health and safety regulations must comply with the Fourth Amendment.  Id. at 537; see also New Jersey v. T.L.O., 469 U.S. 325, 335 (1985) (holding that the Fourth Amendment applies to searches conducted by public school officials and noting, "it would be anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior") (citing Camara, 387 U.S. at 530); Audio Odyssey v. Brenton First Nat'l Bank, 286 F.3d 498 (8th Cir. 2002) (analyzing Fourth Amendment claim arising out of seizure of property pursuant to a writ of replevin); Wolf-Lillie, 699 F.2d at 870 (finding Fourth Amendment violation for execution of an expired writ).  Accordingly, a reasonable officer should have known that a search and seizure conducted pursuant to a writ which had expired would not comply with the Fourth Amendment.

The Government Defendants concede they "did not read the actual writ," but argue that there is no duty to do so, and that their reliance on the USM-285 Process Receipt and Return instead was reasonable.[3]  Defs.' Mot. at 5-7; Defs.' Suppl. Mem. at 4-5. However, it was the Writ, not the USM-285, which set forth the

---

[3]  They also note that "even if they had [read the writ] it is not clear that they would have been able to decipher the return date."  Defs.' Mot. at 5.  However, the clarity of the return date on the Writ is a factual issue not appropriate for determination on summary judgment.

existence and duration of the Government Defendants' authority. The USM-285 is simply what it purports to be – a form to identify property taken and to provide a receipt to the owner, issued by the U.S. Marshals Service.  It was not approved by the Magistrate, and did not include the time limit the Magistrate imposed on the search.  Defs.' Mot., Ex.  A.

"The Fourth Amendment's mandate of 'probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the . . . things to be seized' contemplates that, before a search warrant may be issued, a determination be made by a neutral and detached magistrate of whether these requirements have been met." United States v. Carter, 522 F.2d 666, 673 (D.C. Cir. 1975).  By relying only on the USM-285, the Government Defendants made no effort to ensure their search and seizure complied with the restrictions set by the Magistrate.

In Groh v. Ramirez, the Supreme Court addressed a very similar issue.  540 U.S. 551 (2004).  Groh, a special agent for the Bureau of Alcohol, Tobacco, and Firearms, conducted a search based on a warrant that failed to satisfy the particularity requirement of the Fourth Amendment.  Groh argued that his actions were nonetheless reasonable and that he was entitled to qualified immunity because the search was approved by a magistrate and the application for the warrant identified all the items to be seized, even though the warrant itself did not.  Id. at 554.

The Court rejected the argument and denied qualified immunity, noting that Fourth Amendment rights are not protected "when the officer fails to take the time to glance at the authorizing document and detect a glaring defect . . . ."[4]  Id. at 565 and n.9. The Court made clear that ensuring the warrant "in fact authorizes the search and seizure [the officers] are about to conduct . . . is not a duty to proofread; it is, rather, a duty to ensure that the warrant conforms to constitutional requirements."  Id. at 563 n.6 (internal citations omitted).  The Court held that this principle was clearly established so as to preclude the granting of qualified immunity.  Id. at 564; see also, Camara, 387 U.S. at 528-29 ("except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant") (emphasis added).

The Government Defendants argue that Groh is distinguishable because a writ is "fundamentally different from a search warrant," because its purpose is merely to "discharge a judgment."  Defs.' Suppl. Mem. at 5.  This argument is without merit.  As discussed above, the courts have never made a distinction in their Fourth Amendment analyses between criminal cases (i.e., warrants) and civil cases (i.e., writs).  Regardless of a government officer's

---

[4]    The search at issue in Groh was conducted in 1997. Obviously, the legal principles the Supreme Court held were "clearly established," in 1997 are equally clearly established for the qualified immunity analysis in this case.

purpose, under the Constitution, he or she must obtain judicial approval before entering a private home to conduct a search or seizure.   The Government Defendants in this case entered the Bernsteins' home without a valid writ because the previously given judicial approval had expired.   Just as the Supreme Court noted in Groh, "[n]o reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional."   540 U.S. at 564.

Second, the Government Defendants also assert that they are immune from suit because they were not responsible for ensuring that the Writ was executed prior to its return date.   They claim "there is a written policy of the U.S. Marshals Service placing the duty to read and calculate the return date on the [Service's] Administrative Office," and that they "were directed to execute the writ by their supervisor, Claude Houston."   Defs.' Mot. at 6, 9, Ex. C.   This argument fails for similar reasons.

The case law is clear that the officers executing a search or seizure must themselves heed the demands of the Fourth Amendment. See, e.g., Groh, 540 U.S. at 563 ("It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted."); Carter, 522 F.2d at 676 (finding special agent's warrantless search of an attic unconstitutional and noting "officers of the law likewise have the

13

duty, before undertaking a search, to heed the strictures and demands of the Fourth Amendment"); Marks v. Clarke, 102 F.3d 1012, 1026 (9th Cir. 1997) (reversing district court's finding of qualified immunity based on the officers' reliance on the prosecutor's and magistrate's approval of the search).

Moreover, Plaintiff disputes the Government Defendants' assertion that it was not their responsibility to determine the Writ's return date. Plaintiff asserts that counsel for the Marshals Service testified in his deposition that "the executing deputy marshals, Roberts and Coulson in this case, were responsible for executing the writ in a timely fashion."[5] Opp'n at 5, Ex. 5. Therefore, this material fact is in dispute and cannot be decided at the summary judgment stage.

In this case, the Writ was facially invalid. Even a "cursory reading" of the Writ would have informed the Deputy Marshals they had no authority to enter Plaintiff's home. Groh, 540 U.S. at 564. The law was clearly established that the Government Defendants' search and seizure of Plaintiff's property was subject to the commands of the Fourth Amendment, and that they were themselves

---

[5] The Government Defendants also argue they should be granted qualified immunity because they were "line agents" who should not be held responsible for determining the return date of the Writ. See Defs.' Suppl. Mem. at 5-6. This argument is unclear, as Coulson and Roberts were the only two Marshals who conducted the actual search and seizure of Plaintiff's property. As such, they had the sole responsibility of ensuring that their actions complied with the Fourth Amendment.

14

responsible for ensuring the search and seizure was authorized by the Writ.  Accordingly, the Government Defendants must be **denied** qualified immunity.

> **B.   The Government Defendants Are Entitled to Summary Judgment on Plaintiff's Intentional Infliction of Emotional Distress Claim**

Plaintiff concedes that "intentional infliction of emotional distress <u>as a separate tort</u> is no longer being pursued against the individual Federal Defendants."   Opp'n at 10 (emphasis in original).  Instead, Plaintiff "assumed that once the Government certified that Roberts and Coulson were acting within the scope of their office or employment, which the Government did on May 9, 2002, the <u>common law</u> torts against them were (or would be) converted to torts against the United States."[6]  <u>Id.</u> at 9 (emphasis in original).   As Plaintiff is no longer pursuing this claim against the Government Defendants in their individual capacities, Defendants' Motion is **granted** with respect to the intentional infliction of emotional distress claim.

---

[6]  Plaintiff argues that summary judgment is not warranted on this claim in the related action against the United States.  <u>See Bernstein v. United States</u>, 02-cv-1615 (GK) (D.D.C. filed Aug. 13, 2002).  This issue is not now before the Court, and therefore will not be considered.

C.   **The Government Defendants Are Entitled to Summary
     Judgment on Plaintiff's Negligent Infliction of Emotional
     Distress Claim**

To prevail on her negligent infliction of emotional distress
claim, Plaintiff must prove (1) that Defendants acted negligently,
(2) that Plaintiff suffered either a physical impact or was within
the "zone of danger" of the Defendants' actions, and (3) that
Plaintiff suffered emotional distress that was "serious and
verifiable." Wright v. U.S., 963 F. Supp. 7, 18 (D.D.C. 1997)
(citing Jones v. Howard Univ., Inc., 589 A.2d 419, 424 (D.C.
1991)).

The Government Defendants reference this Court's December 10,
2002 Memorandum Opinion, in which the Court dismissed Plaintiff's
negligent infliction of emotional distress claim with respect to
the private Defendants.  The Court reasoned that because "Plaintiff
has not claimed that Defendants' alleged negligent conduct put her
in physical danger or caused her to fear for her own safety," she
had failed to satisfy the "zone of danger" requirement of this
tort. Bernstein v. Roberts, et al., 02-cv-133 (GK), slip op. at 10
(D.D.C. Dec. 10, 2002).

Plaintiff has not alleged that the Government Defendants'
conduct caused her to fear for her own safety or put her in
physical danger.  Moreover, Plaintiff did not respond to the
Government Defendants' arguments on this claim.  Therefore, the

16

Government Defendants' Motion is **granted** as to Plaintiff's negligent infliction of emotional distress claim.

## IV. CONCLUSION

For the foregoing reasons, the Government Defendants' Motion for Summary Judgment, [**#18**], is **denied** with respect to the Fourth Amendment claim, and **granted** with respect to the intentional infliction of emotional distress claim and the negligent infliction of emotional distress claim.

An Order will issue with this Memorandum Opinion.


December 20, 2005                       /s/_____
                                       GLADYS KESSLER
                                       U.S. District Judge


**Copies to:**  Attorneys of record via ECF

17